# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CANDY MARCUM,
      Plaintiff,

vs.

SCIOTO COUNTY, OHIO, *et al.*,
      Defendants.

Case No. 1:10-cv-790

Weber, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

## I. Introduction

Plaintiff brings this action, as the administratrix of the estate and on behalf of William

Marcum (Marcum), deceased, under 42 U.S.C. § 1983 alleging violations of Marcum's

constitutional rights by David Walker, M.D. (Dr. Walker), Scioto County, and Scioto County

Sheriff's Office employees Sheriff Marty Donini, Jason Lute, Craig Johnson, Jay Springs, and

John and Jane Does 1-10.[1]  (Doc. 1).  Plaintiff claims the individual defendants were deliberately

indifferent to Marcum's serious medical needs in violation of his Eighth Amendment rights and

that Scioto County and Sheriff Donini are liable under § 1983 as the customs and practices

followed at Scioto County Jail caused Marcum to be deprived of his constitutional rights.

Plaintiff also raises Ohio state law claims of wrongful death, loss of consortium, and negligence

against all defendants.  (Doc. 1 at 10).

This matter is before the Court on motions for summary judgment filed by defendants

Scioto County and Sheriff Donini (the County defendants) (Doc. 77), Jason Lute, Craig Johnson,

and Jay Springs (the Individual Officers) (Doc. 78), and Dr. Walker (Doc. 82); plaintiff's

response in opposition (Doc. 107); and defendants Dr. Walker, Craig Johnson, Jay Springs, Jason

---

[1] Plaintiff has voluntarily dismissed all claims against defendants Brett Ervin, Kristi Powell, and Zach
Conkel.  *See* Doc. 107 at 5 n.1.

Lute, Sheriff Donini, and Scioto County's respective replies. (Docs. 110, 112, 113, 114, 115). This matter is also before the Court on the joint motion of the County defendants and individual officers to strike inadmissible evidence (Doc. 111), plaintiff's response in opposition (Doc. 119), and defendants' joint reply. (Doc. 120). The Court will first address the motion to strike.

## II.  Motion to Strike (Doc. 111)

Defendants Scioto County, Sheriff Donini, Jason Lute, Jay Springs, and Craig Johnson move to strike evidence submitted by plaintiff in support of her brief in opposition to defendants' motions for summary judgment. (Doc. 111). Defendants contend that the following evidence proffered by plaintiff should be stricken from the record because it is inadmissible hearsay: (1) Marcum's alleged statements to plaintiff during a November 16, 2008 telephone conversation, including Marcum's alleged requests to a correctional officer for medical assistance (breathing treatment) and the correctional officer's response; and (2) unsworn statements made by Scioto County Jail inmate Tommy Adams.

Hearsay is an out-of-court statement made by someone other than the declarant which is offered as evidence "to prove the truth of the matter asserted in a statement." Fed. R. Evid. 801(c). Hearsay evidence may not be used to create a genuine issue of fact on summary judgment. *Alpert v. U.S.*, 481 F.3d 404, 409 (6th Cir. 2007) ("Evidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded.") (internal citations omitted). Regardless, "motions to strike are disfavored [and] a court should ignore inadmissible evidence instead of striking it from the record." *Berry v. Frank's Auto Body Carstar, Inc.*, 817 F. Supp.2d 1037, 1041-42 (S.D. Ohio 2011) (internal citations omitted), *aff'd*, 495 F. App'x 623 (6th Cir. 2012). *See also* Fed. R. Civ. P. 56(c)

advisory comm. note (2010) (at summary judgment a party may object that hearsay evidence is inadmissible; "[t]here is no need to make a separate motion to strike.").

    A. <u>The Telephone Conversation</u>

    In opposing defendants' motions for summary judgment, plaintiff relies on her own deposition testimony regarding a telephone conversation she had with Marcum on November 16, 2008.  Specifically, plaintiff cites to the following portions of her testimony:

> Q. Okay.  So the 16th, November 16th, 2008, you had a phone call with Mr. Marcum?
>
> A. Yes.
>
> Q. Okay.  Tell us everything that you remember about that phone call.
>
> A.  He said he – he said he was having a real hard time breathing, that he had asked for a door to be opened.  I don't know what door.  They had some kind of rule, it had to be a certain temperature for that door to be allowed to be opened, and it was just like a couple degrees below that, so they wouldn't do that.  And he said he had asked the guard to let him go to the hospital to get a breathing treatment, and they told him to go lay down, he'd be okay.

(Doc. 66 at 65, Deposition of Candy Marcum).  Defendants contend that plaintiff's testimony recalling Marcum's statements is "classic" hearsay and that her testimony about what the guard stated to Marcum is hearsay within hearsay – both of which are inadmissible and should be stricken from the record.  (Doc. 111 at 2-3).

    Plaintiff contends the testimony is admissible because: (1) it is not hearsay; and (2) assuming *arguendo* that it is hearsay, it is admissible under Fed. R. Evid. 803(3).  Plaintiff primarily contends that the testimony is admissible because it is not hearsay as it is not offered for the truth of the matter asserted, *i.e.*, that Marcum asked for a door to be opened or requested a breathing treatment at the hospital, but to prove that the staff at Scioto County jail was put on notice twelve hours before Marcum's death that Marcum was in physical distress.  (Doc. 119 at

2-3).  In support, plaintiff cites *Kuklica v. City of Cleveland*, No. 84-3991, 1986 WL 17706 (6th Cir. Sept. 15, 1986), where the Sixth Circuit determined that similar testimonial evidence was not hearsay and thus admissible.  The *Kuklica* matter involved a deliberate indifference claim where the decedent died due to a drug overdose shortly after being booked and placed in a cell at a police station.  *Id.*, at *1-2.  The district court excluded as hearsay witness testimony that the decedent informed the arresting police officers that she would rather go to the hospital than to the jail.  *Id.*, at *4-5.  The Sixth Circuit held that this testimony was not hearsay as it was not proffered to prove the truth of the matter asserted, *i.e.*, the decedent's preference to go to the hospital and not the jail, but to demonstrate that the arresting officers were on notice that the decedent had requested medical assistance.  *Id.*, at *5.  The Sixth Circuit held that the testimony was admissible for this purpose as it was relevant to the arresting officers' alleged deliberate indifference to the decedent's medical needs.  *Id.*

Defendants argue that to the extent plaintiff seeks to introduce the testimony to prove their notice of Marcum's serious medical need twelve hours before his death, it is inadmissible for relevancy reasons.  Defendants appear to concede that plaintiff's testimony would be admissible for purposes of demonstrating notice under the *Kuklica* scenario but contend that the instant facts are distinguishable.  Defendants specify that in *Kuklica*, the testimony at issue was admissible to show that the *defendant* officers were put on notice.  Here, in contrast, plaintiff's testimony shows only that the guard on duty at Scioto County jail on November 16, 2008, and not the individual defendants, was ostensibly made aware of Marcum's medical needs.  As plaintiff has introduced no evidence that would support imputing this knowledge to the named parties, defendants argue the testimony is irrelevant to plaintiff's claim and thus inadmissible.  (Doc. 12 at 2-3).

The undersigned finds that plaintiff's testimony regarding Marcum's statements to her on November 16, 2008, may be considered in ruling on defendants' summary judgment motions. The Court is persuaded by the Sixth Circuit's holding in *Kuklica*.  Here, as in *Kuklica*, plaintiff does not seek to prove the truth of Marcum's statements that he asked the guard to open the door or send him to receive medical treatment but rather to show that Scioto County jail employees were put on notice of Marcum's serious medical need prior to his death.  *See* Fed. R. Evid. 801(c); *Kuklica*, 1986 WL 17706, at *5.  Whether or not Scioto County staff had notice of Marcum's medical needs 12 hours before his death is highly relevant to both the deliberate indifference and municipal liability claims.  The undersigned therefore finds that it is properly considered in determining whether defendants are entitled to summary judgment.

B. Statements of Inmate Tommy Adams

Plaintiff also seeks to introduce a statement given by Tommy Adams, a former Scioto County jail inmate, to the Ohio Bureau of Criminal Investigation and Identification (BCI).  *See* Doc. 31, Ex. 5, Ohio Bureau of Criminal Identification & Investigation SIU Unit Interview of Tommy Adams (the Adams Statement).  Plaintiff cites to the Adams Statement twice in her opposition to defendants' summary judgment motions.  *See* Doc. 107 at 37-38.[2]  Plaintiff relies on this evidence to show that: (1) on November 16, 2008, Tommy Adams observed Marcum looking pale and white and having difficulty breathing; and (2) on November 16, 2008, at approximately 5:30 p.m., Tommy Adams saw Marcum approach a Scioto County jail employee at the officers' desk to request a breathing treatment and the employee denied the request.  *Id*.

---

[2]The Adams Statement is included in the record as an attachment to the deposition testimony of defendant Jay Springs.  *See* Doc. 31, Ex. 5.

Defendants seek to strike this evidence, claiming that the Adams Statement is inadmissible hearsay.  Plaintiff contends that although the Adams Statement is hearsay, it is nevertheless admissible under the residual hearsay exception, Fed. R. Evid. 807.[3]  For the following reasons, the Court finds that plaintiff is entitled to rely on the Adams Statement in opposing defendants' motions for summary judgment.

Hearsay statements that are not covered by one of the enumerated exceptions in Fed. R. Civ. P. 803 or 804 may be admissible where:

> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
> (2) it is offered as evidence of a material fact;
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) admitting it will best serve the purposes of [the Federal Rules of Evidence] and the interests of justice.

Fed. R. Evid. 807(a).  "[T]he essence of Rule 807 is . . . that the rule should be used only in extraordinary circumstances where the court is satisfied that the evidence offers guarantees of trustworthiness and is material, probative and necessary in the interest of justice."  *Mason v. Mitchell*, 293 F. Supp.2d 819, 825 (N.D. Ohio 2003) (quoting *U.S. v. Harrison*, 296 F.3d 994, 1004 (10th Cir. 2002) (internal citations and quotations omitted)).  "The most significant requirement is that the statement possess "circumstantial guarantees of trustworthiness" equivalent to that of statements admitted under the specific exceptions."  7 Handbook of Fed. Evid. § 807:1 (7th ed. 2012).  In determining if testimony exhibits a guarantee of trustworthiness, the Court should consider whether the totality of the circumstances surrounding the statement "render the declarant particularly worthy of belief."  *Idaho v. Wright*, 497 U.S. 805, 819 (1990).

---

[3]As the parties are in agreement that the Adams Statement is hearsay and for brevity's sake, the Court will not engage in a preliminary hearsay analysis.

6

The undersigned finds that the Adams Statement meets the above enunciated factors for admission under Fed. R. Evid. 807.

First, the Adams Statement has the requisite guarantee of trustworthiness for admission under the residual hearsay rule. In determining under the totality of the circumstances whether hearsay evidence has the requisite guarantees of trustworthiness, courts should consider: (1) the relationship between the declarant and parties; (2) the declarant's motive for making the statement; (3) whether the statement was based on the declarant's personal knowledge; (4) the prior history and consistency of the declarant's statements; and (5) whether other evidence supports the declarant's statement. *See U.S. v. Darwich*, 337 F.3d 645, 660 (6th Cir. 2003) (citing *U.S. v. Barlow*, 693 F.2d 954, 962 (6th Cir. 1982)). Courts may also consider how much time has passed since the events described in the statement occurred and the statement was made; whether the declarant was biased; the declarant's certainty as to his statement; and whether the statement was made in response to suggestive questioning. *See* 7 Handbook of Fed. Evid. § 807:1 (collecting cases). The proponent of a statement sought to be introduced under Rule 807 "bears a heavy burden to come forward with indicia of . . . trustworthiness. . . ." *U.S. v. Phillips*, 219 F.3d 404, 419 n.23 (5th Cir. 2000).

There is no evidence in the record demonstrating that Inmate Adams had any connection or relationship with Marcum aside from his incarceration at Scioto County Jail during the relevant time period. Nor is there any evidence that Inmate Adams is acquainted or has any relationship with plaintiff. Indeed, plaintiff represents that her numerous attempts to locate Inmate Adams for purposes of being a witness in this matter have been unsuccessful. As for Inmate Adams' relationship with defendants, defendants have put forth no evidence demonstrating that there was any animosity between them. It is therefore reasonable to

7

characterize Inmate Adams as a disinterested party with no reason to misrepresent the events he witnessed at Scioto County Jail in the time leading up to Marcum's death.

As for his motive for making the statement, Inmate Adams did not provide this statement voluntarily.  Rather, he was questioned pursuant to a BCI investigation into the event's surrounding Marcum's death.  Given that the statement was gathered as part of a larger investigation, the Court cannot conclude from the record that Inmate Adams had any improper motivation to provide the statement.

Regarding the foundation for the Adams Statement, the content of the statement indicates it was based on Inmate Adams' personal knowledge as he was Marcum's bunk-mate and witnessed firsthand the events he described.  *See* Doc. 31, Ex. 5 at 3-5.  Further, no party contends that the statement was not based on Inmate Adams' personal knowledge.

The record contains no prior history of the declarant's statements or any evidence that he made inconsistent statements about the events surrounding Marcum's death.  There is, however, other evidence supporting Inmate Adams' statements.  Most notably, the fact that Marcum died as a result of experiencing an asthma attack supports Adams' statements that Marcum was having such difficulty breathing that Inmate Adams assisted him in requesting medical assistance from Scioto County Jail employees and, further, that Marcum appeared pale and that his breathing sounded increasingly worse throughout the night.  *See* Doc. 31, Ex. 5 at 3, 8. Likewise, plaintiff's testimony supports Inmate Adams' recollection of Marcum's wheezing and coughing.  *See* Doc. 66 at 65; Doc. 31, Ex. 5 at 5.  This testimony also supports Inmate Adams' statements that Marcum requested and was denied medical care in the form of a breathing treatment.  *Id*.  It therefore appears that the Adams Statement has the necessary guarantees of trustworthiness for admission under the residual hearsay rule.

8

Defendants, however, assert they can easily disprove facts alleged in the Adams

Statement, such as "(1) his statement that the same corrections officer was on duty in the dorm

for the entire shift, (2) his statement that he walked up to the correction's officer's desk with

Marcum right before Marcum's collapse – a statement that is demonstrably false since the video

shows Marcum walking up alone, and (3) his statement that the same corrections officer was on

duty during both second shift and during third shift when Marcum collapsed – something that not

even [p]laintiff alleges." (Doc. 111 at 7 n.6). The Court is not persuaded by defendants'

assertions primarily because defendants fail to proffer any evidence in support. Moreover,

plaintiff is relying on the statement to support two discrete issues: (1) that Marcum approached

an officer on November 16 to request a breathing treatment and was refused assistance; and (2)

that Marcum's asthma symptoms worsened throughout the night. *See* Doc. 107 at 37-38. As

noted above, these observations are consistent with other evidence of record. Further, that

Inmate Adams did not accurately recount the shift details of Scioto County Jail employees is

irrelevant to the issues presented by this case. The Court further questions the defendants'

reliance on the video tape of the officer's desk at the Scioto County Jail from the evening of

November 16, 2008, to contradict the Adams Statement given that the video recording of the

time preceding Marcum's asthma attack is missing. *See* Doc. 111 at 9-10 (defendants assert the

video recording had been sent out for maintenance due to a hard drive failure and, upon return,

the machine did not contain the video of the officer's desk from November 16, 2008). Given: (1)

the lack of a relationship between Inmate Adams and the parties; (2) the lack of evidence of any

improper motive for Adams providing the statement; (3) the undisputed fact that the Adams

Statement was based on his own personal observations; (4) the absence of evidence showing that

Inmate Adams had a history of giving untrue statements and the *de minimis* nature of the

contradictions cited by defendants; and (5) the existence of significant evidence supporting the portions of the statement upon which plaintiff relies, the Court finds the Adams Statement has the necessary guarantees of trustworthiness for admission under Fed. R. Evid. 807(a)(1).

Second, the Adams Statement is offered to show that Marcum was experiencing severe asthma on November 16, 2008, the day before his death, and that Scioto County Jail employees were put on notice of same.  Whether or not Scioto County Jail staff was aware that Marcum had a serious medical need that was not addressed prior to his death is a threshold issue in plaintiff's lawsuit.  Thus, the Adams Statement is offered as evidence of a material fact.  Fed. R. Evid. 807(a)(2).

Third, the Adams statement is more probative on the issue of what happened on the evening of November 16, 2008 than any other evidence that plaintiff has been able to obtain through reasonable efforts.  There are four potential sources of the information provided by Inmate Adams: (1) Marcum; (2) the video recording of the officer's desk on November 16, 2008; (3) the three officers on duty at this time, Officers Springs, Lute, and Johnson; and (4) Inmate Adams.  Marcum is deceased and therefore cannot provide the necessary information.  The video recording is no longer in existence.  None of the three officers recall whether Marcum interacted with an officer at the officers' desk. [4]  Inmate Adams is unavailable as plaintiff is unable to locate him.  As there is no other source of information capable of providing the information in the Adams Statement, it is the most probative of all available evidence.  Fed. R. Evid. 807(a)(3).

---

[4]Officer Springs testified that he was only able to recall that he was doing security checks and that he was in the dorm area of Scioto County Jail on November 16, 2008; he specifically testified that he did not remember whether he spoke with Marcum that night.  (Doc. 31 at 52, 54).  Officer Lute testified that he did not remember if he had any interaction with Marcum on November 16, 2008.  (Doc. 96 at 37).  Officer Johnson testified that he interacted with Marcum on November 16, 2008, while walking the medication cart through Marcum's dorm but provided no testimony about whether Marcum interacted with anyone at the officers' desk.  (Doc. 95 at 59).

Fourth, admission of the Adams Statement will best serve the purposes of the Federal Rules of Evidence and the interests of justice. Fed. R. Evid. 807(a)(4). A primary purpose of the evidence rules is to ascertain the truth. Fed. R. Evid. 102. Admission of the Adams Statement for the limited purposes sought by plaintiff serves this purpose as it allows the Court to consider all of the relevant evidence in the record in determining whether factual disputes necessitate a trial on the merits. Moreover, the interests of justice are best served by the Court's review of a full and complete factual record at the summary judgment stage. For these reasons, the Adams Statement should be admitted into evidence under the residual hearsay exception set forth in Fed. R. Evid. 807.

In sum, the Court finds that plaintiff's testimony about her telephone conversation with Marcum is admissible as non-hearsay. The Court further finds that the Adams Statement should be admitted under Fed. R. Evid. 807 as it: (1) has the requisite guarantees of trustworthiness; (2) is offered as evidence of a material fact; and (3) is more probative than any other available evidence as to whether Marcum appeared pale and approached the officers' desk to request medical assistance. Further, its admission serves the purposes of the Federal Rules of Evidence and the interests of justice by providing a more complete factual record. The undersigned therefore recommends that defendants' motion to strike (Doc. 111) be **DENIED**.

C. Plaintiff's Spoliation Claim

Plaintiff seeks an adverse inference ruling against defendants as to the missing November 16, 2008 telephone and video recordings. (Doc. 107 at 38-39). Plaintiff asserts that this evidence is recorded in the ordinary course of business at Scioto County Jail and that its absence is highly prejudicial to plaintiff's prosecution of her deliberate indifference claim. Plaintiff seeks sanctions against defendants in the form of a jury instruction that the missing audio and video

tapes would support her version of the facts, *i.e.*, that Marcum was wheezing and requested and was denied medical assistance by Scioto County Jail staff.  *Id*.  *See also* Doc. 119 at 11.  As stated above, defendants acknowledge that the video recording was destroyed due to an alleged malfunction in the hard drive of the recording device.  *See* Doc. 111 at 9-10.  Defendants assert the audio recording of the alleged November 16, 2008 phone call was automatically purged pursuant to the retention policy of Scioto County's telephone vendor.  *See* Doc. 111, Ex. 2.

"[T]he authority to impose sanctions for spoliated evidence arises . . . 'from a court's inherent process to control the judicial process.'"  *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)).  Spoliation sanctions are intended to "serve both fairness and punitive functions."  *Id*.  The severity of a sanction may correspond to a party's level of fault for failing to produce evidence, and may include an instruction to a jury to infer a fact based on lost or destroyed evidence.  *Id*. at 652-53 (internal citation omitted).

> [A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)).  *See also Byrd v. Alpha Alliance Ins. Corp.*, 518 F. App'x 380, 383-84 (6th Cir. 2013).  The degree of a party's culpability for the destruction of relevant evidence is a fact intensive inquiry left to the broad discretion of a district court.  *Adkins*, 554 F.3d at 653.

As an initial matter, defendants contend that plaintiff is not entitled to an adverse inference ruling because her spoliation claim is untimely as it was first raised in opposition to defendants' motions for summary judgment.  (Doc. 111 at 7-9).[5]  In support, defendants cite to *Cody v. Allstate Indemnity Co.*, No. 1:05-cv-573, 2007 WL 4460616 (S.D. Ohio Dec. 14, 2007), which found that the plaintiff could not raise spoliation claims for the first time in response to summary judgment motions.  The *Cody* Court, pursuant to its diversity jurisdiction, based its determination on Ohio state law under which spoliation of evidence is recognized as an independent tort cause of action.  *See Cody*, 2007 WL 4460616, at *2.  The instant case, in contrast, arises under the Court's federal question jurisdiction under which federal law, and not state law, controls the application of spoliation sanctions.  *See Adkins*, 554 F.3d at 652.  Thus, the fact that plaintiff in the instant case did not previously raise her spoliation claim as an independent cause of action does not preclude this Court's consideration of plaintiff's request for spoliation sanctions.

Applying the *Beaven* factors, the Court finds the destroyed evidence is relevant to plaintiff's claim.  It cannot be seriously disputed that the audio and video recordings allegedly containing Marcum's reports to plaintiff and Scioto County Jail staff that he was experiencing difficulty breathing, requested medical treatment, and was denied same are relevant to plaintiff's deliberate indifference claim.  Likewise, there is no doubt that this evidence would provide support for plaintiff's claims if viewed by a trier of fact.  Therefore, this aspect of *Beaven* is met and supports plaintiff's request for an adverse inference.

---

[5] Plaintiff contends that throughout this litigation defendants have been on notice of plaintiff's concerns over the destruction of the video of the officer desk on the evening of November 16, and that the issue has been raised repeatedly in the questioning of witnesses during depositions.  (Doc. 98 at 121:21-124:17, Deposition of

13

The Court also determines that defendants were obligated to preserve the audiotape and videotape at the time they were destroyed.  *Beaven*, 622 F.3d at 553.  Defendants claim they had no duty to preserve the phone call evidence[6] because they had no reason to know that plaintiff would claim, years later, that there was an "important" phone call recording Marcum's wheezing the day before his asthma attack.  Defendants contend that inmate telephone recordings made in 2008 were automatically purged/destroyed by the jail's inmate telephone vendor pursuant to its standard retention period of one year from recording date.  Defendants assert that plaintiff failed to inform anyone of the alleged phone call with Marcum until two years after the incident.  *See* Doc. 111, Ex. 2.  The Court disagrees.

A defendant owes a duty of due care to preserve evidence if a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action.  *Beaven*, 622 F.3d at 553.  *See also Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) ("[t]he duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation").  Here, the Sheriff's office referred this matter to BCI for an independent investigation within hours of Mr. Marcum's death.  The January 2009 "Prosecutor's Summary," which summarized the criminal investigation into Marcum's death, was sent to Sheriff Donini.  The Summary states that Sheriff Donini contacted BCI on November 18, 2008, requesting a "special criminal investigation" into the events surrounding Marcum's death on November 17.  (Doc. 122, Ex. 5, Prosecutor's Summary).  The

---

defense expert Dr. Wilcox; Doc. 72 at 80:19-21, Deposition of Dr. Exline; Doc. 97 at 121: 12-16, Deposition of Lawrence Mendel D.O.).

[6] Defendants do not contend they were under no duty to preserve the videotape.

Prosecutor's Summary also states that the BCI investigator attempted to interview Marcum's family, but they declined an interview based on the advice of their attorney.  (*Id*. at 4).  That Sheriff Donini himself requested a criminal investigation into the events surrounding Marcum's death coupled with the fact that Marcum's family had allegedly engaged an attorney so close in proximity to Marcum's death should have alerted the defendants to potential legal action involving Marcum's death.  As such, it would have been reasonable to preserve any evidence of phone calls made by the decedent the day preceding his death.  The undersigned finds that defendants had an obligation to preserve the video and audio recordings from November 16, 2008, as Marcum's death should have put them on notice that litigation was reasonably foreseeable.  *See Beaven*, 622 F.3d at 553.

Less clear is whether the audio and video recordings were destroyed with "a culpable state of mind."  *Id*.  Defendants maintain that the audio recording was purged pursuant to a policy that phone call recordings are not maintained longer than one year from the recording date.  (Doc. 111, Ex. 2).  Given that the audio recording was destroyed pursuant to the ordinary course of business, the Court cannot conclude that defendants' deleted this evidence in bad faith.  However, plaintiff may prove that defendants had a culpable state of mind by demonstrating that the evidence was knowingly or negligently destroyed.  *Byrd*, 518 F. App'x at 384.  *See also Stocker v. U.S.*, 705 F.3d 225, 235 (6th Cir. 2013) ("even negligent conduct may suffice to warrant spoliation sanctions under appropriate circumstances.").  Here, even though defendants did not destroy the audio recording in bad faith, their failure to ensure its preservation was negligent given its obvious import to any investigation into and the likelihood of litigation related to Marcum's death.  *See Coach, Inc. v. Dequindre Plaza, L.L.C.*, No. 11-cv-14032, 2013 WL 2152038, at *10 (E.D. Mich. May 16, 2013).  The Court finds plaintiff is entitled to an

adverse inference in the form of a jury instruction that the audio recording from November 16, 2008, between her and Marcum, supports her testimony.

As for the video recording, the Court finds that at a minimum, defendants negligently failed to preserve this evidence.  Defendants argue there was no negligence on their part because the DVR containing the video from November 16 mechanically failed and attempts to recover the video by sending the DVR to its manufacturer failed.  (Doc. 111, Exs. 4-6).  The Court views this issue as one of timing.  The County chose to preserve from the DVR the video recording of Marcum's death taken during the early morning hours of November 17, 2008.  That the County chose not to preserve the video from the hours preceding Marcum's death on November 16 while at the same time preserving the later video defies logic.  Defendants acknowledge the relevance of the November 16, 2008 video, as did the BCI investigator who requested a copy of the video recording, and the DVR was not sent out for repair until December 18, 2008, one month after Marcum's death.  Defendants were obligated to preserve the video and their failure to *timely* do so resulted in the destruction of this evidence. This evidence supports a finding that defendants negligently failed to preserve the video recording.  The Court therefore finds that plaintiff is entitled to an adverse inference with respect to the missing video evidence.

### III. Summary Judgment Motions (Docs. 77, 78, 82)

All defendants have moved for partial summary judgment on plaintiff's federal and state law claims.  Defendant Walker moves for summary judgment on plaintiff's § 1983 claim, asserting that plaintiff cannot establish he was deliberately indifferent to Marcum's serious medical needs; he has not moved for summary judgment on plaintiff's state law wrongful death, loss of consortium, or negligence claims.  (Doc. 82).  Defendants Jason Lute, Jay Springs, and Craig Johnson move for summary judgment on plaintiff's § 1983 claim and plaintiff's state law

wrongful death claim, but not on the loss of consortium or negligence claims.  (Doc. 78).
Defendants Scioto County and Sheriff Donini move for summary judgment on plaintiff's § 1983
and wrongful death claims.  (Doc. 77).  The following undisputed facts are universal to all
defendants' motions.

### A. Facts[7]

The following facts are undisputed except where otherwise noted.

1. Marcum was an inmate at Scioto County Jail from October 10, 2008 until November 17,
   2008, when he was removed from the facility by ambulance and died.

2. Dr. Walker was the physician for Scioto County Jail during Marcum's residency at the
   jail.

3. During his October 10, 2008 admission to Scioto County Jail, Marcum reported that he
   had asthma, but identified no medications.  The parties dispute whether Marcum stated
   that he required medication for his asthma at the time of his admission to Scioto County
   Jail.  The parties further dispute whether Marcum was educated by Scioto County Jail
   employees as to how to request medication or medical care.

4. Marcum was not regularly treating with a physician prior to his incarceration at Scioto
   County Jail.  The parties dispute the severity of Marcum's asthma and whether he was
   regularly taking any asthma medication.

5. Plaintiff reported that Marcum had asthma "spells" one to two times a year which he
   treated with over-the-counter medication or by visiting the emergency room.

---

[7] Pursuant to the District Judge's standing order, defendants filed separate proposed findings of fact (Docs. 82, Ex. 1, 83, 84) and plaintiff filed an underlined version of these proposed facts indicating which facts were undisputed.  (Doc. 93).  This recitation reflects the parties' representations in these filings.

6. On October 16, 2008, Marcum completed a Health Request form wherein he requested medications for asthma attacks stating, "I need to get my albuterol tablets, 2x daily, and inhaler for my asthma.  I've been here since the 10th without any and I'm starting to have attacks."  The parties dispute whether Marcum's medication request was approved by Dr. Walker.

7. On October 20, 2008, Marcum received an inhaler and albuterol tablets.

8. On October 30, 2008, Marcum requested a refill of his albuterol tablets.  The parties dispute whether Marcum had been taking his albuterol tablets as prescribed.

9. On November 7, 2008, Marcum received refills of his albuterol tablets and inhaler.  The parties dispute whether Marcum requested further medical attention and whether Marcum was denied requested medical care.

10. On November 16, 2008, defendants Jay Springs, Jason Lute, and Craig Johnson were on duty at Scioto County Jail from 4:00 p.m. to 12:00 a.m.  The parties dispute whether Marcum requested and was denied medical assistance from any or all of these defendants during their November 16, 2008 shift.  The parties further dispute whether these defendants were aware that Marcum was having difficulty breathing on November 16, 2008.

11. On November 17, 2008, Correctional Officers Brett Ervin and Zach Conkel and Deputy Kristi Powell were on duty at Scioto County Jail from 12:00 a.m. to 8:00 a.m.

12. On November 17, 2008, shortly after midnight, Marcum approached Officer Ervin with complaints of difficulty breathing and shortness of breath.

13. In response, Officer Ervin retrieved an inhaler and gave it to Marcum; the inhaler was not labeled with Marcum's name.

14. Officer Ervin contacted his shift supervisor, Deputy Powell, and informed her that Marcum was having difficulty breathing.

15. Deputy Powell escorted Marcum out of the area with the assistance of two inmates and requested that an ambulance be dispatched.

16. Deputy Powell called Officer Conkel and requested his assistance.

17. While the inmates and Deputy Powell were escorting Marcum to the medical area, Deputy Powell was no longer able to hear Marcum wheezing.

18. Officer Conkel arrived on the scene and saw inmate Justin White administering chest compressions to Marcum.  The parties dispute whether inmate White recalled any interaction between Marcum and defendants Springs or Lute prior to midnight on November 16, 2008.

19. Officer Conkel asked inmate White to stop compressions while he checked for a pulse.

20. Officer Conkel felt a carotid pulse but Marcum was not breathing.

21. Deputy Powell began to use a breathing device on Marcum and Officer Conkel went to meet the paramedics.

22. While using the breathing device, Deputy Powell was no longer able to feel a carotid pulse on Marcum.

23. Cardiopulmonary resuscitation (CPR) was continued on Marcum until the paramedics arrived and took over Marcum's medical care.

24. Marcum was then transported from Scioto County Jail to the Southern Ohio Medical Center where he was pronounced dead.

25. The cause of death on Marcum's autopsy report is listed as status asthmaticus.[8]  The parties dispute whether Marcum had taken or inhaled benzodiazepine drugs within the 24 hours preceding his death.

26. Scioto County had various medical policies in place in 2008 governing medical personnel, health care screening and medical exams, emergency medical care, sick calls, inmate medical complaints, documentation of treatment, and medication administration.

**B. Summary Judgment Standard**

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action.  The court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)).  The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor.  *Id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).  However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

---

[8]Plaintiff's expert, Dr. King, stated that status asthmaticus is a severe condition "in which the bronchoconstriction of the airways and the inflammation of the airways do not respond satisfactorily to administration of multiple types of drugs that are used to treat asthma, so it is considered to be a degree of asthma or a stage of asthma that is highly refractory to treatment with multiple medications, and requires often that the patient

When a defendant has identified the shortfall in a plaintiff's case, the plaintiff must come forward with evidence establishing a material issue of fact for resolution by the fact-finder. *Anderson*, 477 U.S. at 252.  The Court is not obligated to "comb through the record to ascertain whether a genuine issue of material fact exists."  *Cacevic v. City of Hazel Park*, 226 F.3d 483, 492 (6th Cir. 2000) (citing *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 407, 410 (6th Cir. 1992)).

The Court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *Id*. (citing *Cities Serv*., 391 U.S. at 288-289).  If the evidence is merely colorable, *Dombrowski v. Eastland*, 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv*., 391 U.S. at 290, judgment may be granted.  *Anderson*, 477 U.S. at 249.

### C. Resolution

1. David Walker, M.D. (Doc. 82)

Dr. Walker argues he is entitled to summary judgment on plaintiff's § 1983 deliberate indifference to serious medical needs claim because Marcum's serious medical need was not known until shortly before Marcum's death.  Dr. Walker contends that prior to November 17, 2008, Marcum's asthma did not present as a serious medical condition.  Dr. Walker further asserts that Marcum was provided appropriate medical treatment for his asthma during his stay at Scioto County Jail.  (Doc. 82).

---

be hospitalized or treated in an emergency department."  (Doc. 71 at 21-22).

In opposition, plaintiff asserts that Marcum's asthma was a serious medical condition as evidenced by Marcum's death and supported by previous court holdings that asthma is presumptively serious.  Plaintiff further contends that Dr. Walker failed to provide the appropriate standard of care for asthma patients as there is no evidence that Marcum's condition was monitored while he was an inmate at Scioto County Jail.  Lastly, plaintiff argues that Dr. Walker failed to set up an adequate treatment system at Scioto County Jail for inmate health care such that he effectively abandoned Marcum as a patient.  (Doc. 107 at 14-17, 31-35).  For the following reasons, the undersigned recommends that Dr. Walker's motion for summary judgment be denied.

To establish her § 1983 deliberate indifference claim, plaintiff must present evidence showing "acts or omissions sufficiently harmful to evidence deliberate indifference to [the] serious medical needs" of Marcum.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  *See also Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009).  An inmate who is allowed to suffer needlessly through a denial of medical care when relief is available has a cause of action under the Eighth Amendment against an individual whose deliberate indifference caused the suffering.  *Id*; *Byrd v. Wilson*, 701 F.2d 592, 594 (6th Cir. 1983); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976).  Such a claim has both an objective and subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seizer*, 501 U.S. 294, 297-300 (1991).  *See also Spears*, 589 F.3d at 254.

The objective component requires that the deprivation alleged be "sufficiently serious."  *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 298).  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a

lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004) (internal citations omitted).

Under the subjective component, plaintiff must establish that defendants acted with deliberate indifference to Marcum's serious medical needs, *Estelle*, 429 U.S. at 106; *see also Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 302-303, which requires evidence that the defendant ignored a known risk of harm. *Farmer,* 511 U.S. at 837, 842. A prison official may be held liable for denying an inmate humane conditions of confinement only if he knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Prison officials must exhibit more than lack of due care for a prisoner's health or safety before an Eighth Amendment violation will be found. *Id.* at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. It is not enough that the official "should" have perceived a significant risk, but did not. *Id.* Moreover, liability will not be found where a prison official actually knew of a substantial risk of harm to an inmate if he responded reasonably to the risk, even if the harm ultimately was not averted. *Farmer*, 511 U.S. at 844. Applying these standards to the instant case, the Court concludes that genuine issues of material fact exist as to whether Dr. Walker was deliberately indifferent to Marcum's serious medical needs.

As to the objective component of plaintiff's claim, the record evidence viewed in the light most favorable to plaintiff supports a finding that Marcum's asthma was a serious medical need prior to his death on November 17, 2008. The undisputed facts demonstrate that: (1) Marcum reported having asthma upon admission to Scioto County Jail; (2) Marcum reported having asthma attacks which required medication on October 16, 2008; (3) Marcum received

medication, including an inhaler and albuterol tablets, on October 20, 2008; (4) Marcum requested a refill of his albuterol tablets on October 30, 2008; (5) Marcum received an albuterol refill on November 7, 2008; and (6) Marcum died on November 17, 2008, due in part to experiencing an asthma attack. Upon review of these facts, the Court finds that Marcum's asthma presented as a serious medical need.

The parties have submitted various authorities in support of their opposing arguments as to whether asthma, in and of itself, is a serious medical need. For example, Dr. Walker cites to *Harris v. Anderson*, No. 2:07-cv-186, 2009 WL 1850446, at *4 (E.D. Tenn. June 26, 2009),[9] where the court determined that the inmate-plaintiff failed to state a deliberate indifference claim because, though he suffered from chronic asthma, he had not alleged that he was having an actual asthma attack. Notably, the Tennessee court acknowledged that asthma attacks "may well amount to a sufficiently serious condition." *Id.* Dr. Walker also cites to *Martin v. Mathena*, No. 7:11-cv-10, 2012 WL 43609, at *4 (W.D. Va. 2012), an unreported out-of-circuit case where the court held that an inmate-plaintiff who had reported experiencing problems with his asthma to prison staff failed to state a deliberate indifference claim because he had not reported or alleged that he was experiencing an actual asthma attack but only symptoms of chronic asthma. Dr. Walker's reliance on these authorities is misplaced.

Here, it is undisputed that Marcum reported to the medical staff at Scioto County Jail that he was experiencing asthma attacks. Asthma attacks have been held to meet the "obviousness" standard as the symptoms associated with an asthma attack are "obvious and recognizable to even a lay person." *Harrison v. Ash*, 539 F.3d 510, 518-19 (6th Cir. 2008). Dr. Walker was

---

[9]Dr. Walker incorrectly cites to this unreported Eastern District of Tennessee case as Sixth Circuit authority. *See* Doc. 82 at 9.

prescribing Marcum medication for his reported asthma attacks. This was presumptively due to Dr. Walker's belief that Marcum's asthma mandated treatment and, thus, was a serious medical need. *See Blackmore*, 390 F.3d at 897. The seriousness of Marcum's condition is further underscored by Marcum's autopsy identifying the cause of death as status asthmaticus.[10] The Court therefore finds that plaintiff has satisfied the objective component of her deliberate indifference claim.

As for the subjective component, there is a genuine dispute as to whether Dr. Walker acted with deliberate indifference to Marcum's serious medical needs. Dr. Walker contends that his treatment of Marcum does not amount to deliberate indifference. In support, Dr. Walker cites to deposition testimony to establish that in response to Marcum's request for medication to treat his asthma, Dr. Walker prescribed an albuterol inhaler and tablets which were provided to Marcum on or about October 20, 2008. *See* Doc. 82 at 4. Marcum subsequently requested a refill of his albuterol tablets on October 30, 2008. Dr. Walker asserts that this request was premature as his prescription should have lasted 14 days, or until November 4, 2008. Nevertheless, Marcum was provided with refills of both the tablets and inhaler on November 7, 2008.[11] No further refills were requested by Marcum and Dr. Walker alleges that Marcum appears to have refused a health screening on November 10, 2008. *See* Doc. 66, Ex. 1, Refusal

---

[10] Dr. Walker asserts that Marcum's death was caused by an allergic reaction to inhaled benzodiazepines, citing the deposition testimony of Dr. Thomas Parker at p. 90:15 to 91:6. (Doc. 82 at 1). The Court's review of this deposition testimony does not reflect this conclusion. In fact, the Court was unable to locate the term "benzodiazepine" in Dr. Parker's deposition transcript.

[11] Dr. Walker contends that Marcum's ostensibly premature request supports a determination that Marcum was not taking his medication as provided, *i.e.*, one pill per day. However, the doctor does not address the fact that Marcum did not receive refills until November 7, 2008, which would indicate that Marcum was without medication for, at a minimum, three days had he been taking the medication as prescribed or for a week if he was without medication as of the date of the refill request. It is a questionable practice to criticize an "early" refill request in light of the fact that the request was not fulfilled for a week. Further, the request did not appear to be notable to Dr. Walker at the time as he approved the refill without asking Marcum why he needed the refill prematurely or examining him to determine if the medication was effective.

of Medication Treatment Form. Dr. Walker contends that given the absence of further requests for medical treatment, the record establishes that he was not deliberately indifferent in his treatment of Marcum.

In opposition, plaintiff presents evidence that the medical treatment provided Marcum was not only inadequate, but the result of systemic deficiencies for which Dr. Walker was responsible resulting in the lack of accurate health and medical information necessary to treat Marcum. A jail physician "has a duty to do more than simply provide some treatment to a prisoner who has serious medical needs; instead, the doctor must provide medical treatment to the patient without consciously exposing the patient to an excessive risk of serious harm." *Phillips v. Roane Cty, Tenn.*, 534 F.3d 531, 544 (6th Cir. 2008) (quoting *LeMarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001)). The relevant question is "whether a reasonable doctor in his position could have concluded that a substantial risk of serious harm to [the inmate] existed." *Id.*

In this case, it is undisputed that Dr. Walker never examined Marcum at any time even though there were multiple medication orders for Marcum. (Doc. 36 at 70, Deposition of Dr. Walker). Dr. Lambert King, plaintiff's expert, opined that it was medically necessary that Marcum receive a physical examination and have his vital signs monitored prior to being prescribed albuterol. *See* Doc. 99 at 5-6. As Dr. King explained:

> For a person with asthma or other serious medical problems, routine measurement of vital signs – blood pressure, heart or pulse rate per minute, respiratory rate (breaths per minute) and temperature - is fundamental and elementary. Furthermore, it was medically necessary for Mr. Marcum to have a medical history and physical examination (including vital signs), prior to receiving the drug albuterol that was prescribed by Dr. Walker on October 20, 2008. Mr. Marcum's vital signs were never measured in the Scioto County Jail until paramedics were summoned on November 17, 2008 to transport him to the hospital after he suffered a cardiopulmonary arrest.

\*
\*
\*

On October 20, 2008, when the medication albuterol was initiated for Mr. Marcum, it was medically incumbent on Dr. Walker or other staff of the jail to conduct further medical evaluation in order for an adequate standard of care to be met. It was incumbent on Dr. Walker to either arrange to see Mr. Marcum himself or to instruct a nurse or other health professional to conduct an initial health appraisal and to discuss the results of said assessment with him. On several occasions after October 20, when prescriptions for albuterol tablets and inhalers were refilled, Dr. Walker had the opportunity to see and examine Mr. Marcum so that Mr. Marcum's asthma and possible other medical problems could be evaluated and treated properly, thereby effectively intervening in the progression of asthma to status asthmaticus (with mucus plugging) that resulted in Mr. Marcum's untimely and preventable death.

\*
\*
\*

The standard of care for use of short acting beta agonist drugs and corticosteroids includes prior evaluation and examination; identification and avoidance of environment or personal "triggers" of bronchoconstriction; measurement of airflow using spirometry or peak expiratory flow measurement; followed by stepwise use and adjustment of medications and periodic assessment. In the case of Mr. Marcum, none of these essential components of standard of care were provided by Dr. Walker or any other personnel of the Scioto County Jail. I believe with a reasonable degree of medical certainty that if these components of standard of care had been largely met, Mr. Marcum's death due to status asthmaticus would have been prevented.

(Doc. 99 at 6-8). Dr. King further opined that Dr. Walker's treatment of Marcum fell short of the standard of care that should have been provided and that Marcum's death was a result of a profound and systemic dysfunction in the Scioto County Jail medical care system due, in part, to Dr. Walker's failure to adhere to "fundamental standards of medical care for persons with asthma." *Id*. at 8, 13-14.

In light of the conflicting evidence cited by the parties, summary judgment is inappropriate. Given the evidence of Marcum's asthma attacks which required medication while

27

Marcum was at Scioto County Jail and Dr. King's opinion that Marcum should have been examined and had his vital signs monitored in connection with his condition, a jury could find that Dr. Walker was deliberately indifferent to Marcum's serious medical needs by failing to physically examine Marcum or direct that Marcum's vitals be assessed in conjunction with the prescription of drugs for Marcum's asthma.  *See Padula v. Trumbull Cty., Ohio*, No. 4:10-cv-2876, 2012 WL 3260231, at *11-12 (N.D. Ohio Aug. 8, 2012); *Derfiny v. Pontiac Osteopathic Hosp.*, 106 F. App'x 929, 934-36 (6th Cir. 2004).  The undersigned therefore concludes there is sufficient evidence demonstrating a genuine issue of material fact for trial as to whether Dr. Walker was deliberately indifferent for purposes of plaintiff's § 1983 claim.[12]

    2. Jason Lute, Jay Springs, and Craig Johnson (Doc. 78)

    Scioto County Correctional Officers Jason Lute, Jay Springs, and Craig Johnson move for summary judgment on plaintiff's § 1983 deliberate indifference and state law wrongful death claims on the bases of qualified and statutory immunity, respectively.  The Individual Officers contend there is no evidence that they had any knowledge of Marcum's serious medical need or were deliberately indifferent to it and they are therefore entitled to summary judgment.  As the Individual Officers' arguments are restricted to the subjective component of plaintiff's § 1983 claim, the only relevant inquiry is whether there is a genuine issue of material fact as to whether the Officers were deliberately indifferent to Marcum's serious medical need on November 16, 2008.  For plaintiff's claim to survive the instant motion, there must be evidence demonstrating that the Individual Officers were aware of and disregarded a substantial risk of harm to

---

[12]Although he is a state actor for the purposes of section 1983, Dr. Walker is not entitled to assert the defense of qualified immunity.  In *McCullum v. Tepe*, 693 F.3d 696  (6th Cir. 2012), the Sixth Circuit denied qualified immunity to a physician who contracted with a county jail to provide part-time medical services to inmates.  The Court held that "there does not appear to be any history of immunity for a private doctor working for

Marcum's health and safety.  *Farmer*, 511 U.S. at 835-37.  Viewing the evidence in the light most favorable to plaintiff, the undersigned finds that genuine issues of material fact preclude summary judgment for the Individual Officers.

In support of their motion, the Individual Officers cite to: (1) the purported absence of direct evidence that Marcum personally complained about a serious medical need to the Individual Officers as evidenced by the affidavits of the Individual Officers, each of which states, "William Marcum never complained to me about any problems, medical or otherwise, on November 16, 2008 or any other time for that matter" (Doc. 78, Exs. 1, 2, 3); (2) Dr. King's testimony that he had no personal criticism or opinion of the Individual Officers (Doc. 71 at 11-13, Deposition of Dr. King)[13]; and (3) the testimony of inmate Justin White who testified that he did not recall Marcum interact with Officer Lute or Officer Springs. (Doc. 70 at 91, Deposition of Justin White).

In response, plaintiff has produced direct and circumstantial evidence which, if believed, could lead a jury to conclude that the Individual Officers were aware of Marcum's need for medical attention on November 16, 2008, and disregarded his request for medical attention. Plaintiff presents evidence that Marcum's condition continued to worsen over the weeks leading up to his fatal asthma attack on November 16, 2008.  (Doc. 98 at 83, 99-100, Deposition of Dr. Wilcox; Doc. 72 at 9-10, Deposition of Dr. Exline).  There is also evidence that Marcum audibly and visibly exhibited signs of respiratory distress on November 16, 2008.  Plaintiff testified that on November 16, 2008, Marcum was audibly wheezing and had notified the on-duty guard at

---

the government, and the policies that animate our qualified-immunity cases do not justify our creating an immunity unknown to the common law." *Id*. at 704.

[13]While Dr. King testified he had "no personal criticism" of the Individual Officers, he also stated, "I do have some opinions about the degree to which correctional officers that interacted with Mr. Marcum had not been

Scioto County Jail that he was in medical distress, but was told to go lay down.  (Doc. 66 at 65,

105-106).  Justin White, an inmate who was a trained EMT and who was in the same dorm as

Marcum, testified he recognized Marcum was having an asthma attack from his wheezing and

difficulty catching his breath.  (Doc. 37 at 22, Deposition of Justin White).  Mr. White testified

that Marcum's asthma "was pretty bad.  He had a pretty hard time trying to breathe.  He tried to

catch his breath, he couldn't catch his breath.  It just seems as time went on, it progressed worse.

. . .  He had problems earlier that day, too, but it just got really bad in the evening."  (*Id.* at 20).

Mr. White testified, "his breathing was so poor that he -- you could tell he wasn't getting very

much air.  His color was changing.  You could tell he couldn't breathe correct."  (*Id*. at 84).

Inmate Adams stated that Marcum appeared pale and white and was having difficulty breathing.

*See* Doc. 31, Ex. 5 at 3-5, 8.  Further, it is undisputed that Officers Jason Lute, Craig Johnson,

and Jay Springs were all on duty at Scioto County Jail on November 16, 2008 during the relevant

time period that Marcum exhibited symptoms of a severe asthma attack.  (Doc. 78, Exs. 1-3).

Officer Lute was working in Marcum's dorm from 4:00 p.m. to 6:40 p.m. on November

16.  (Doc. 72, Ex. 2, ¶¶ 3-5)  Inmate Adams reported that on November 16, Marcum was

wheezing, having trouble breathing, and was weak.  Adams assisted Marcum to the correction

officers' desk around 5:30 p.m. where he requested a breathing treatment.  The officer refused

Marcum any assistance and Adams then assisted Marcum to his bed.  Adams stated that

Marcum's asthma symptoms proceeded to worsen.  Approximately one hour later Marcum

requested an inhaler from the same officer.  (Doc. 31, Ex. 5 at 3-5, 8-12).  Although Officer Lute

was the duty officer in Marcum's dorm at the time, he testified at his deposition that he could not

---

adequately trained in medication administration and in assessment of patients who might be having difficulty with a
chronic illness like asthma."  (Doc. 71 at 12).

say one way or the other if Marcum requested medical assistance from him on November 16, 2008.  (Doc. 96 at 43-44).  In an affidavit submitted in conjunction with his summary judgment motion, however, Officer Lute now states that Marcum never notified him of a medical problem on November 16, 2008.  (Doc. 78, Ex. 2).[14]  Though there was a video camera recording the activity at the officer's desk, defendants allege the videotape of the desk area for the evening of November 16 is no longer available.  Finally, defense expert Dr. Wilcox testified that if a corrections officer was approached by Marcum at 5:30 to 6:30 on the day before his death seeking medical help, he believed it was incumbent on the officer to seek medical attention for Marcum.  (Doc. 98 at 119-120, Deposition of Dr. Wilcox).

Officer Johnson was working in Marcum's dorm from 6:40 p.m. until sometime after 9:00 p.m. on November 16.  Inmate Justin White, who testified that Marcum was having audible and visible difficulty breathing on November 16, 2008, also testified that Marcum spoke with Officer Johnson on several occasions during the evening about getting an inhaler.  (Doc. 37 at 21-24, 66-68).  Officer Johnson testified at his deposition that he spoke with Marcum on November 16, 2008, while passing out medications, and that Marcum was seeking his inhaler but that it was not on the medication cart.  (Doc. 95 at 57-65).  Inmate White testified that Officer Johnson came by around 9:15-9:30, and said that he had called the request for the inhaler over the radio and was waiting to see what they said.  (Doc. 37 at 27).  Shortly thereafter, Mr. Marcum asked Officer Johnson if he had heard anything yet, and Officer Johnson replied, "not yet."  (*Id*. at 29).  At this time, Justin White told Officer Johnson that Marcum needed the inhaler and that he needed to go to the hospital.  (*Id*. at 82).  Although Officer Johnson testified at his

---

[14] Officer Lute may not rely on affidavit evidence which contradicts his earlier deposition testimony at summary judgment.  *See Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986).  Nevertheless, Officer

deposition that he spoke with Marcum who was seeking his inhaler, in the affidavit he submitted in conjunction with his summary judgment motion he now denies Marcum ever complained about any problems.  (Doc. 78, Ex. 3).[15]

Officer Springs was working in Marcum's dorm on November 16, 2008 from 9:20 p.m. to 12:00 a.m.  Officer Springs testified that at 10:00 p.m. on November 16 he began conducting security checks every 30 minutes to determine, *inter alia*, whether any inmates were in need of medical attention.  (Doc. 31 at 51-52).  As the evidence cited above indicates, Marcum was visibly and audibly exhibiting signs of an asthma attack, and Officer Springs' security checks were made after Marcum had repeatedly asked about breathing treatments and inhalers.  Dr. King and Dr. Exline opined that Marcum's chance of survival would have increased if he had been taken to the hospital earlier on November 16, 2008.  (Doc. 99 at 13; Doc. 72 at 84).

Plaintiff has proffered evidence showing that the Individual Officers were on duty on November 16, 2008 during the time Marcum was exhibiting demonstrable breathing problems. The evidence cited above, if believed, suggests that Marcum was in obvious distress requiring medical attention and that the Individual Officers were aware of this distress.   Although the obviousness of the risk itself is not sufficient to impose liability under a theory that the defendants should have known about the risk, the obviousness of the risk is circumstantial evidence of a prison official's knowledge.  *See Farmer*, 511 U.S. at 842 ("[A] fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").  Plaintiff has presented sufficient evidence that each of the Individual Officers had been exposed to Marcum's serious condition during their tours of duty at the jail dormitory on

---

Lute's inconsistent representations present a fact question for the jury.

November 16.  While the evidence defendants cite may demonstrate that they were not, in fact, deliberately indifferent, at summary judgment the evidence must be viewed in the light most favorable to plaintiff and all reasonable inferences must be drawn in plaintiff's favor.  Given the totality of the circumstantial evidence, a jury could conclude that Officers Lute, Johnson, and Spring were each aware of facts from which the inference could be drawn that Marcum suffered from a sufficiently serious medical need and that each drew that inference, but failed to take reasonable steps to address the harm to Marcum.  The Court therefore finds that the Individual Officers are not entitled to qualified immunity on plaintiff's deliberate indifference claim.

The Court now turns to the Individual Officers motion for summary judgment on plaintiff's Ohio state law wrongful death claim.  The Officers assert that they are statutorily immune from this claim, citing to Ohio Rev. Code § 2744.03(A)(6).  (Doc. 78 at 7).  Section 2744.03(A)(6)(b) provides that public employees are immune from liability for wrongful death claims unless, *inter alia*, "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."  Ohio Rev. Code § 2744.03(A)(6)(b).  The Officers argue that there is no evidence that establish they acted maliciously, in bad faith, wantonly, or recklessly, such that they are entitled to statutory immunity.  (Doc. 78 at 8).  Plaintiff disagrees and contends that the facts supporting her deliberate indifference claim establish that the Officers were reckless and are therefore not immune from her state law wrongful death claim.  (Doc. 107 at 47).

As employees of Scioto County, the Individual Officers are protected by the general grant of statutory immunity provided by § 2744.03.  *Mayes v. Columbus*, 664 N.E.2d 1340, 1348

---

[15]As with Officer Lute, Officer Johnson may not rely on this affidavit evidence to refute his contrary deposition testimony; regardless, his inconsistent representations present a fact question for the jury.

(Ohio 1995).  The statute provides that the Officers cannot be held liable for mere negligence, but that plaintiff must demonstrate their conduct falls into one of the enunciated exceptions, such as recklessness.  *Fabrey v. McDonald Village Police Dept.*, 639 N.E.2d 31, 36 (Ohio 1994).  Courts should presume that the immunity attaches.  *Cook v. Cincinnati*, 658 N.E.2d 814, 821 (Ohio 1995).  Under Ohio law, "[r]eckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct."  *Anderson v. Massillon*, 983 N.E.2d 266, 273 (Ohio 2012).  "The issue of whether an officer's actions were reckless is usually appropriate for resolution by the trier of fact."  *Wingrove v. Forshey*, 230 F. Supp.2d 808, 827 (S.D. Ohio 2002) (citing *Fabrey*, 639 N.E.2d at 35 and *Potter v. Troy*, 604 N.E.2d 828, 837-38 (Ohio 1992)).

Plaintiff has raised a genuine issue of material fact as to whether the Individual Officers engaged in reckless conduct such that the exception to statutory immunity applies.  Viewing the facts in the light most favorable to plaintiff, a jury could perceive the Individual Officers' purported failure to respond to Marcum's alleged appearance and requests for medical care as reckless.  A jury may also decide not to credit the evidence proffered by plaintiff and determine that the Officers acted with due care towards Marcum on November 16, 2008.  As the issue comes down to what evidence may be deemed credible, it is necessary for the trier of fact to resolve the issue of the Individual Officers' alleged reckless conduct such that they are not entitled to statutory immunity.

The undersigned therefore recommends that the Individual Officers' motion for summary judgment be denied in its entirety.

3. <u>Scioto County and Marty Donini (Doc. 77)</u>

The County defendants assert they are entitled to summary judgment on plaintiff's §
1983 municipal and supervisory liability claims against the County and Sheriff, respectively,
because: (1) there is no underlying constitutional violation upon which to base a municipal or
supervisory liability claim; and (2) there is no custom, policy, or practice that was the moving
force behind any alleged constitutional deprivation.  The County and Sheriff Donini further
assert they are statutorily immune from plaintiff's state law claims against them.

At the outset, the Court will address defendants' argument that there is no underlying
constitutional violation supporting a municipal liability claim.  As discussed above, the record
supports a finding that Marcum's asthma was a serious medical condition as he reported to
Scioto County Jail staff that he was experiencing asthma attacks as early as October 16, 2008,
one month prior to Marcum's fatal asthma attack.  Further, there exist genuine issues of material
fact as to whether Dr. Walker and the Individual Officers were deliberately indifferent to
Marcum's serious medical need.  In light of these determinations, the County's contention that
there was no underlying Eighth Amendment violation supporting plaintiff's municipal liability
claim is not well-taken and the County defendants are not entitled to summary judgment on this
basis.  The Court will now address defendants' remaining arguments.

a.    *The Municipal Liability Claim*

A municipality or county may not be held liable under 42 U.S.C. § 1983 for the
tortious conduct of its employees on a *respondeat superior* theory.  *Polk Cty. v. Dodson*, 454
U.S. 312, 326 (1981); *Monell v. Dept. of Soc. Srvs.*, 436 U.S. 658, 691 (1978).  However, a
government body may be liable for its employees' constitutional violations where the county or
municipality itself, through a policy, practice, or custom, caused the constitutional injury.  *Id*. at

694.  "The municipality, through its deliberate conduct, must be the moving force behind the constitutional deprivation."  *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Polk Cty. v. Dodson*, 454 U.S. 312 (1981)).  *See also City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988); *Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 495-97 (6th Cir. 2008) (to establish municipal liability for a claim of deliberate indifference to serious medical needs, plaintiff must demonstrate a direct causal link between a municipal policy, custom, or practice, and the constitutional violation).  Plaintiff may prove the existence of a policy or custom by looking to: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom or tolerance or acquiescence of federal rights violations."  *Thomas*, 398 F.3d at 429.

A "policy," for municipal liability purposes, refers to a formal rule or understanding, written or not, approved by the municipality's official decision makers, intended to "establish fixed plans of action to be followed under similar circumstances consistently and over time."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).  Here, plaintiff does not allege that a formal policy was the moving force behind the violation of Marcum's constitutional rights.  Rather, plaintiff contends that the customs and practices at Scioto County Jail, including its failure to adequately train and supervise County employees, were the moving forces behind the constitutional violation.   "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."  *Bd. of Cty. Com'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).  Likewise, a municipality can be

held liable on a "failure to train" theory under § 1983 where "inadequate training can justifiably be said to represent '[municipal] policy.'" *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

**(1)  Failure to train and supervise Scioto County Jail staff**

"One way to prove an unlawful policy or custom is to show a policy of inadequate training or supervision." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *City of Canton v. Harris,* 489 U.S. 378, 387 (1989)).  Plaintiff asserts the County defendants failed to train and supervise Scioto County Jail staff to ensure that Marcum and other jail inmates received adequate medical care.  The County defendants may be liable under a failure-to-train theory if Marcum's death can be attributed to the County's failure to adequately train Jail staff and that failure amounted to deliberate indifference to the rights of Jail inmates.  *City of Canton*, 489 U.S. at 388.  Plaintiff must demonstrate that (1) the training program at issue is inadequate to the tasks that officers must perform;  (2) the inadequacy is the result of the County's deliberate indifference; and (3) the inadequacy is closely related to or actually caused Marcum's death.  *City of Canton*, 489 U.S. at 389-91; *Plinton v. Cty. of Summit,* 540 F.3d 459, 464 (6th Cir. 2008).  Deliberate indifference may be demonstrated in two ways: by showing "prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury" or by showing "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation."  *Plinton*, 540 F.3d at 464.

In support of her failure to train claim, plaintiff proffers Officer Johnson's testimony that though he was responsible for administering medication, he received no training about

medication side effects. (Doc. 95 at 20, 22).  Shawn Sparks, Jail Administrator of Scioto County

jail, testified that if an inmate refused to take medication, the officer should advise the inmate of

the "consequences" of refusal, but that the officers were not trained with respect to any of those

adverse consequences.  (Doc. 34 at 35).  Defense expert Dr. Mendel testified that jail staff should

be trained on maintaining medication administration records (Doc. 97 at 32) and Jeremy Estes,

the Scioto County Jail nurse during the relevant time period, testified that it was customary  for

him to see Scioto County Jail staff failing to properly maintain the jail's medication

administration records, as indicated by indecipherable blank spaces on medication logs.  (Doc.

32 at 10).  Dr. Walker did not create any instruction sheet to guide jail staff in maintaining

medication logs or any other recording system to monitor inmates' medication compliance.  Nor

was Dr. Walker aware of where the medication logs were actually kept.  (Doc. 36 at 34-36, 47).

Plaintiff also relies on the expert opinion evidence from Dr. King and defense expert Dr. Wilcox,

who opined that Scioto County Jail's practice for completing medication logs, particularly

Marcum's, was improper.  *See* Doc. 99 at 14; Doc. 98 at 90.  Dr. Wilcox was unable to discern

from the medication log when Marcum was given his albuterol inhaler and he testified that a

nurse or doctor providing medical care to Marcum should be able to rely on the log to determine

when he was given medication.  (Doc. 98 at 90-91).  Plaintiff also presents evidence that neither

Jail Administrator Shawn Sparks nor Dr. Walker were made aware that corrections officers were

leaving medication logs blank.  (Doc. 34 at 33; Doc. 36 at 46).  Nor did Sheriff Donini know

who supervised the accuracy of the medication logs and Shawn Sparks disavowed this

responsibility and stated that he believed the nurses were in charge of the logs.  (Doc. 33 at 64;

Doc. 34 at 30-31).  Dr. King explained that Marcum's medication forms contained numerous

instances where jail staff marked that Marcum refused his asthma medication or where the

checkboxes were simply left blank and that these inconsistently completed records support the conclusion that substandard practices placed Marcum and other inmates with asthma at significant and needless risk for death due to status asthmaticus.  (Doc. 99 at 11, 14).

Scioto County and Sheriff Donini counter by citing to the "Written Directives Policy and Procedures" which provide the following:

> Prescription and non-prescription medications will be administered by Deputy sheriffs, Correction Officer who are <u>trained</u> in the Sheriff's Office procedures regarding the administration of medications and medical supplies and who have completed the required basic training for Deputy sheriff, Correction Officer in Ohio. . . . The following procedures shall be followed in administering medication: … Officer will initial box that corresponds with medication time that was given to the inmate.

(Doc. 77, Ex. 3 at 10, § 04.09 Inmate Medication) (emphasis in original).  Defendants assert this policy is undoubtedly constitutional and that while its employees did not always properly complete paperwork, this occasional negligent administration of a sound program cannot form the basis of a municipal liability claim.  (Doc. 77 at 25, citing *City of Canton*, 489 U.S. at 391).

The undersigned finds that the evidence presented by plaintiff creates a genuine issue of material fact as to whether Scioto County Jail failed to adequately train and supervise its staff on the administration of medical care to inmates.   Dr. Mendel testified that a key provision of inmate medical care is properly handing out and documenting the medications they receive and observing their responses, and that a clinician would rely on the information set forth in the medication log to some degree.  *See* Doc. 97 at 32, 34-36.  The evidence from Nurse Estes and Dr. King demonstrate that there were multiple instances of jail staff failing to properly complete medication logs, including Marcum's.  Nor does it appear there was any individual responsible for ensuring medication compliance issues.  Thus, while Scioto County may have a policy in place, there are issues of fact as to whether the policy was followed in practice and, if not,

39

whether the lack of adequate medication administration contributed to Marcum's death.  A jury

could reasonably determine that the County defendants failed to adequately train and supervise

its staff in the administration of medication and, further, that its formal policy fails to provide

sufficient training as to medication side effects, such that it was deliberately indifferent to the

serious medical needs of Marcum and other inmates.  The County defendants' motion for

summary judgment in this regard should be denied.

### (2) Customs and practices leading to systemic deficiencies

Plaintiff claims that Scioto County is liable for Marcum's death because of an

institutionalized failure in the administration of medical care to inmates at Scioto County Jail.

Plaintiff presents evidence that the medical care system at Scioto County Jail suffered from

systemic deficiencies as a result of practices or customs that led to Marcum's inadequate care

and death.  These included: (1) the failure of the Sheriff to designate a physician responsible for

health care services; (2) the failure to provide mandatory health screenings to Jail inmates; (3)

the practice of not taking, recording, and communicating basic vital signs of  inmates; and (4) the

lack of established written protocols governing the medical treatment of Scioto County Jail

inmates.

### (a)  Lack of a designated physician responsible for overall health care services to inmates

As Sheriff of Scioto County, Sheriff Donini is the final policymaker and is ultimately

responsible for the administration of medical care at Scioto County Jail.  *See* Doc. 33 at 19

(Sheriff Donini testified that he made the final call on the policies and procedures for the jail's

operation).  *See also* Doc. 31, Ex. 1 at 12.  To that end, the Sheriff is required to appoint a

physician as medical director of Scioto County Jail "who shall be responsible for health care

services pursuant to a written agreement, contract, or job description." Ohio Admin. Code § 5120.1-8-09.[16]  Yet, there was no written agreement between Scioto County and Dr. Walker describing his employment duties. *See* Doc. 97 at 18-21, Deposition of Dr. Mendel. Plaintiff presents evidence that Sheriff Donini and Dr. Walker, the individuals charged with overseeing the jail's medical system, had no clear understanding of what their respective functions were during the relevant time period. Neither had an accurate understanding as to who was to fulfill the medical director role at Scioto County Jail. *See* Doc. 33 at 49 (Sheriff Donini testified that he was unaware of what role Dr. Walker had with respect to Scioto County Jail medical policies); Doc. 36 at 13 (Dr. Walker testified that he never created medical policies for Scioto County Jail and described his job as simply seeing inmates who signed up for sick call). Dr. King, plaintiff's expert, opined:

> Dr. Walker disavowed any defined responsibility on his part to assure that all receiving screening examinations were being properly reviewed, follow-up physical exams were being properly scheduled and done, and that the quality of health care in the jail was being assessed and maintained. For his part, Sheriff Donini in his deposition was unable to demonstrate that there was any arrangement in place whereby Dr. Walker had actually accepted or was being paid to fulfill any of the aforementioned oversight functions necessary to comply with Ohio codes for provision of medical care in the Scioto County Jail. Because of these gross failures in administration and leadership, the medical care system in the Scioto County Jail was fundamentally dysfunctional during the time that Mr. Marcum was confined there between October 10 and November 17, 2008. This profound and systemic dysfunction resulted in the failure to provide Mr. Marcum with anything approaching an adequate standard of medical care for his asthma. If the Scioto County Sheriff had fulfilled his responsibility to have a system that met Ohio codes and even its own policies and procedures, I believe with a reasonable degree of medical certainty that Mr. Marcum's death from status asthmaticus would have been prevented.

---

[16]The Court notes that Scioto County is liable for the actions of both Sheriff Donini and Dr. Walker in their capacity as policymakers. *See Pembaur*, 465 U.S. at 480-83. *See also, e.g., Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 496-97 (6th Cir. 2008) (finding that County was liable for deliberate indifference to prisoner's serious medical needs where Sheriff was final policy maker and responsible for jail medical care policies).

(Doc. 99 at 8-9).

(b)  <u>The failure to provide mandatory health screenings to Jail inmates</u>

Ohio law requires that "[q]ualified health care personnel shall complete a health appraisal

for each prisoner within fourteen days after arrival at the jail."  Ohio Admin. Code § 5120:1-8-

09(D).[17]  Plaintiff contends that despite this requirement, the custom at Scioto County Jail was to

solicit refusals from inmates for health screenings.  One officer, Matthew Frantz, testified that a

health screen would be offered to inmates, but it was up to the inmates to decide whether they

wanted it or not.  (Doc. 35 at 59).   The Jail utilized the "Refusal of Medication Treatment" form

to document inmate refusals.  *Id.*  Officer Frantz testified that he would get a list of inmates to

transport to the medical unit for health screening exams, as well as multiple copies of the refusal

form.  In 2008, only six inmates at Scioto County Jail elected to have a health examination while

106 refused.  (Doc. 72 at 87, Deposition of Dr. Exline.; Doc. 105, Ex. 18).  Plaintiff's expert, Dr.

King, noted that "[r]efusals by inmates to have health exams were commonplace and there are no

records of education or counseling to the inmates that signed these refusals."  (Doc. 99 at 14).

Dr. Walker testified that he could not identify any health professional responsible for educating

inmates about the risks of refusing examinations (Doc. 36 at 48-49); Nurse Estes testified that he

did not consistently educate patients about the risks of refusing the examination (Doc. 32 at 23-

24); and Shawn Sparks testified that officers at Scioto County jail received no instruction to

educate inmates about the benefits of examinations or risks associated with refusal.  (Doc. 34 at

47).  Dr. Mendel testified that it would be an issue of concern to him if he were a clinical

---

[17]  The screening must include laboratory and/or diagnostic tests to detect tuberculosis and other suspected communicable diseases; a medical examination including review of mental and dental status; review of results of the medical examination tests and identification of problems by a physician or other qualified health care personnel;

42

physician in a jail where the vast majority of the inmate physical exams were declined.  (Doc. 97 at 64).

      (c)  <u>The failure to check inmate vital signs</u>

      Plaintiff contends that Scioto County Jail had a practice of not taking, recording, and communicating baseline vital signs of asthma patients like Marcum, which resulted in serious illnesses going undiagnosed and untreated.  There is no record that Marcum's vital signs were ever taken when he was at Scioto County Jail, and Scioto County Jail officers were not trained to take inmates' vitals or provided the necessary equipment to do so.  (Doc. 33 at 78; Doc. 95 at 21-22).   A review of inmate files shows that between July 2007 and March 2009, "57 inmates were administered asthma medication at the jail . . . .  Of those, 33 were prescribed asthma medication . . . only 19 ever had their vitals taken at the jail and only 12 had their vitals taken at the time the medication was prescribed."  (Doc. 107 at 29, citing Doc. 100, ¶ 13, Declaration of Curtis Eilers).  Dr. Mendel testified that it is important to monitor vital signs to determine problems with, response to, or overuse of medication.  (Doc. 97 at 82).   Nurse Estes testified that he would have taken and recorded Marcum's vital signs if he had personally examined him because "[v]itals are important."  (Doc. 32 at 67).  Dr. King opined that it is "fundamental and elementary" to measure the vital signs of asthma patients and "medically necessary for Mr. Marcum to have a medical history and physical examination (including vital signs), prior to receiving the drug albuterol that was prescribed by Dr. Walker on October 20, 2008."  (Doc. 99 at 6).  Based upon his review of inmate records, Dr. King opined that there were "many instances when vital signs should have been taken" but were not recorded and that "vital signs were not

---

initiation of therapy when determined necessary by the jail physician; and development and implementation of a treatment plan, among others.

recorded for inmates receiving inhalers" and that such practices were deficient and substandard and placed Marcum at significant and needless risk of death.  (Doc. 99 at 14).

(d)  <u>Lack of established protocols governing inmate medical treatment</u>

Plaintiff maintains that the lack of established written protocols regarding inmate medical treatment at Scioto County Jail, such as whether inmates should have been examined by a doctor before receiving asthma medication, amounts to systemic deliberate indifference to inmates' serious medical needs.[18]  Ohio law provides that "[m]edical care shall be performed by qualified health care personnel pursuant to written protocol or order of the jail physician."  Ohio Admin. Code § 5120:1-8-09.  Plaintiff presents evidence that Dr. Walker failed to establish protocols for providing and overseeing medical care at Scioto County Jail in contravention of Ohio law governing medical care in jails.  Sheriff Donini testified that the Scioto County Jail policies governing medical care were drafted by Captain Hall, not Dr. Walker, in contravention of state law requirements.   Dr. Walker testified that he "signed off" on previously existing medical policies but did not himself draft any policies.  (Doc. 107 at 29, citing Doc. 36 at 13-15).  Nurse Estes testified that Dr. Walker created unofficial, unwritten protocols for handling repeats situations (Doc. 32 at 17-18), which Dr. Walker denied.  (Doc. 36 at 14).  Ohio law also requires that emergency medical equipment and supplies, as determined by the jail physician, shall be available at all times, inventoried monthly and replenished as needed.  Ohio Admin. Code § 5120:1-8-09(Q).  Dr. Walker testified that Scioto County Jail did not have medical equipment, like a nebulizer for providing breathing treatments in 2008 (Doc. 36 at 66); however, Nurse Estes

---

[18] The "Written Directives Policy and Procedures" governing health care of Scioto County Jail inmates provide no directives on whether inmates receiving asthma or any other prescription medication are to be examined by medical staff or have their vitals taken and/or monitored.  *See* Doc. 31, Ex. 1.  To the extent there are policies regarding medication, they are limited to the methods by which medication should be administered by jail staff.  *Id.*

and Officer Ervin testified that the jail indeed had such equipment on hand at the time of Marcum's incarceration.  (Doc. 32 at 113; Doc. 89 at 18).  Plaintiff argues that this ignorance is emblematic of the failed medical system at Scioto County Jail and that the lack of established protocols for the administration of care to asthmatic patients directly contributed to Marcum's inability to receive adequate health care for his asthma.

Scioto County contends it is entitled to summary judgment on plaintiff's municipal liability claim because plaintiff cannot show that any constitutional injury to Marcum was the result of a Scioto County policy, practice, or custom.  (Doc. 77 at 6).   The County argues that it has written policies in place governing the medical care provided to Scioto County Jail inmates.  (Doc. 77, Ex. 2, Affidavit of Marty V. Donini).  There is a policy allowing inmates to request healthcare; for emergency care; for medical documentation; and for medication administration.  (*Id.*).   In October and November of 2008, when Marcum was incarcerated, there was a medical unit for inmates who needed constant medical monitoring and a medical infirmary for Dr. Walker and the nurses to see inmates, administer treatment, and complete paperwork.  (Doc. 33 at 9, 11-12, Donini Depo.).  There were medical care request forms that inmates could fill out in order to request medical treatment (*id*. at 55-56), and emergency medical supplies, including a defibrillator, were available if needed.  (*Id*. at 60).   The County notes that of the 449 records of inmates with asthma produced during discovery, none contain inmate complaints about the adequacy of their medical treatment at Scioto County Jail.  (Doc. 77 at 6).  The County further contends that its inability to locate a copy of its contract with Dr. Walker was not the driving force behind any constitutional violation or Marcum's death.

---

at 7-9.  Notably, the deposition testimony of Nurse Estes demonstrates that it was customary for jail staff to administer medication without following these protocols.  *See* Doc. 32 at 46-47.

Scioto County and Sheriff Donini also present evidence that Marcum was offered a physical health screening while in jail, but he refused that exam in writing.  (Doc. 77, Ex. 2). They argue that Marcum, like every other inmate, had the right to refuse medical treatment, a proposition with which plaintiff's expert, Dr. King, agreed.  (Doc. 71 at 81, 107-108). Defendants further argue that whether a health examination would have been beneficial to Marcum is purely speculative, citing to Dr. Exline's opinion that a physical exam would likely have shown normal vital signs and would not have predicted a severe asthma attack seven days later.  *See* Doc. 77, Ex. 4, November 13, 2012 Letter.

Scioto County and Sheriff Donini also dispute there was a practice of not taking vital signs.  They present evidence that if an inmate requested a specific asthma medication, Dr. Walker would generally prescribe the requested medication for continuity of care without examining the inmate, but if an inmate complained of general breathing difficulty or asthma without indicating a need for a specific medication, the inmate would be examined and evaluated.  (Doc. 77, Exline Aff. at ¶ 8).  Dr. Exline stated that it was not necessary for a doctor to physically examine or take vital signs of patients requesting previously used asthma medication and that Scioto County Jail's practice of prescribing asthma without examining patients or taking their vital signs regularly fell within the standard of medical care.  (Doc. 72 at 18-20, 89-90; Doc. 77, Ex. 4, November 13, 2012 Letter).  Defendants argue that even if it were the custom to not take vital signs of asthmatic inmates, this is insufficient to establish a claim of deliberate indifference as no inmate had previously had a severe asthma attack or complained about the adequacy of their asthma treatment.  (Doc. 77, Ex. 2, ¶¶ 10-11).

The Court finds that plaintiff has presented sufficient evidence to establish genuine issues of material fact as to whether the customs and practices for providing inmate medical care at

Scioto County Jail amount to deliberate indifference to Marcum's serious medical needs.

Viewed in the light most favorable to plaintiff, the evidence concerning the lack of a designated

physician responsible for health care services and practices at the Jail (as opposed to one who

only saw inmates who signed up for sick call); the failure to provide mandatory health screenings

to Jail inmates; the practice of not taking vital signs of  inmates; and the lack of established

written protocols governing the medical treatment of Scioto County Jail inmates, when taken

together, show a systemic problem with health care delivery at the Jail.

It is undisputed that there was no written contract defining Dr. Walker's role as the Scioto

County Jail physician and the testimony of Dr. Walker and Sheriff Donini demonstrate that

neither had a clear understanding of such.[19]  The evidence presented by plaintiff, if credited by a

jury, reflects a haphazard approach to the administration of health care to, minimally, inmates

with asthma at Scioto County Jail.  Dr. Walker, the physician charged with developing and

approving medical protocols, testified that he merely adopted protocols that were already in

place.  Further, Dr. Walker's testimony supports plaintiff's position that he did not understand

his position as a medical director.  There appears to have been no set standard for how asthmatic

patients were treated or examined during the relevant period and whatever medical protocols

were in place were drafted by police personnel, not a physician.  A jury could reasonably

conclude from this evidence that Scioto County Jail lacked adequate medical protocols for caring

for asthmatic inmates like Marcum and that Sheriff Donini and Scioto County's acquiescence to

the jail's practices supports a finding of municipal liability.

---

[19] While defendants' inability to produce a written contract between Scioto County and Dr. Walker reflects poorly on their recordkeeping abilities, it is the lack of established duties for Dr. Walker - not the missing contract - that supports plaintiff's position.

In addition, there are disputes of fact over whether Scioto County Jail employees customarily solicited health examination refusals from inmates such that the County was deliberately indifferent to its inmates' serious medical needs.  Although Ohio law mandates health appraisals for inmates within fourteen days of their incarceration, the evidence proffered by plaintiff shows that in one year, less than 5% of inmates received the routine health examinations.  There is evidence that inmates are not given any information to help them make an educated and informed decision to refuse the screening.   Further, the form documenting Marcum's purported health screen refusal fails to specify the particular procedures he was refusing by declining a "health screen."  If presented with this evidence and Dr. King's opinion that such refusals and recordkeeping errors are commonplace, a jury could reasonably determine that Scioto County Jail's customs with respect to mandatory health examinations resulted in the failure to identify inmates with serious medical problems and amounted to deliberate indifference to its inmates' serious medical needs.

Also, there is conflicting expert and circumstantial evidence as to whether Scioto County Jail had a custom of not taking inmates' vital signs and not regularly monitoring the vital signs of asthmatic inmates such as Marcum.  A jury faced with this conflicting evidence could determine that Scioto County Jail's failure to regularly monitor the vital signs of asthmatic inmates is tantamount to deliberate indifference of serious medical needs.

Whether there was a "profound and systemic dysfunction" at the Jail that resulted in the failure to provide Marcum "with anything approaching an adequate standard of medical care for his asthma" (Doc. 99 at 9) as Dr. King opined is a question of fact for the jury.  A jury could find from the above evidence that Scioto County Jail had a custom of providing inadequate health care to inmates such that the County is liable for deliberate indifference to Marcum's serious

medical needs.  Therefore, defendants' motion for summary judgment on the municipal liability claim should be denied.

To the extent the County claims that Dr. King's expert opinion regarding the level of medical care provided to Scioto County Jail inmates should not be considered because the County was purportedly prejudiced by plaintiff in its preparation for Dr. King's deposition, the Court disagrees.  Scioto County and Sheriff Donini assert that Dr. King's[20] analysis of inmate records should be excluded because defendants were purportedly prejudiced in their ability to depose Dr. King.  *See* Doc. 77 at 25-27.  Defendants specify that Dr. King reviewed "only 50 of the 449 inmate files provided to him [and he] was unable to identify which files he specifically reviewed."  *Id*. at 25.  Defendants contend that this lack of detail effectively deprived them from being able to meaningfully question the evidence upon which Dr. King based his opinion.  *Id*. at 26.

Defendants' criticisms of Dr. King's opinion go to the weight that should be afforded to his testimony – not its admissibility.  *See Best v. Lowe's Home Centers, Inc.*, 563 F.3d 171, 182 (6th Cir. 2009) (weaknesses in an expert's methodology "affect the weight that his opinion is given at trial, but not its threshold admissibility."); *McLean v. 988011 Ontario, Ltd.,* 224 F.3d 797, 801 (6th Cir. 2000) ("[M]ere 'weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility." (quoting *United States v. L.E. Cooke Co.,* 991 F.2d 336, 342 (6th Cir. 1993) (internal citations omitted)).  The Court therefore finds that Dr. King's opinion is admissible for purposes of determining the instant

---

[20]The County erroneously refers to Dr. King as Dr. Lambert throughout this portion of its brief.  *See* Doc. 77 at 25-26.  The Court construes this as a typographical error and assumes that the County's argument relates to its request to exclude evidence from plaintiff's medical expert Dr. Lambert King.

summary judgment motion.

      b.    *The Supervisory Liability Claim*

Plaintiff asserts that Sheriff Donini's ratification of his employees' action is a further basis for liability on the County defendants. Plaintiff contends that evidence of a policy of deliberate indifference can be found in the failure to investigate an incident and punish the responsible parties. (Doc. 107 at 30, citing *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1242-43 (6th Cir. 1989)). Plaintiff argues that Sheriff Donini's conclusion that no one should be disciplined and all department rules and standards of conduct were followed amounts to "affirmative approval" of the particular policies and decisions that led to Marcum's death.

This case is distinguishable from *Leach* and *Marchese v. Lucas,* 758 F.2d 181 (6th Cir. 1985), the case upon which *Leach* relied. There, the finding of supervisory liability was premised on the failure to initiate and conduct any "meaningful investigation on the part of the Sheriff himself." *Marchese*, 758 F.2d at 187-88; *Leach*, 891 F.2d at 1248 ("[f]urther evidence of a policy of deliberate indifference is found in the Sheriff's failure to investigate this incident and punish the responsible parties."). Here, in contrast, Sheriff Donini initiated an investigation into Marcum's death. *See* Doc. 33 at 39. Sheriff Donini testified that he tasked the officer in charge of the detective division with investigating the circumstances of Marcum's death which involved, *inter alia*, gathering statements and physical evidence. *Id*. at 39-40. Following the investigation and review of the investigative report, the Sheriff determined that there was no need to discipline any employee. *Id*. at 41. Sheriff Donini's decision was based upon his determination that no rules or policies had been violated by his employees. *Id*. Where, as here, an investigation has been conducted "courts have been reluctant to impose municipal liability based on a ratification theory." *Daniels v. City of Columbus*, 2002 WL 484622, *6 (S.D. Ohio

Feb. 20, 2002) (citing *Anthony v. Vaccaro*, 43 F. Supp.2d 843, 848 (N.D. Ohio 1999) (no

municipal liability based on ratification theory where government officials conducted

investigation of alleged misconduct).  *See also Walker v. Norris*, 917 F.2d 1449, 1457 (6th Cir.

1990) (finding no municipal liability where investigation undertaken); *King v. City of Eastpointe*,

86 F. App'x 790, 804 (6th Cir. 2003) ("actions by the City do not amount to the 'deliberate

indifference' necessary for municipal liability under a theory of ratification" where City

investigated incidents).  Accordingly, the County defendants' motion for summary judgment on

plaintiff's ratification theory should be granted.

      c.     *The State Law Claim*

      Scioto County moves for summary judgment on plaintiff's state law wrongful death

claim against it on the basis of statutory immunity.  Ohio Rev. Code § 2744 provides that

political subdivisions, such as Scioto County, are immune from liability for wrongful death

claims unless the death falls into one of four enumerated exceptions.  *See* Ohio Rev. Code §

2744.02(A)(1), (B)(1).  These exceptions are limited to deaths caused by motor vehicle

accidents; an employee's negligence in the scope of his or her employment; the County's failure

to remove obstructions from public roads; or employee negligence in maintaining the grounds or

buildings used in governmental functions.  Ohio Rev. Code § 2744.02(B)(1).  Plaintiff concedes

that Scioto County is immune from liability on her state law claims.  *See* Doc. 107 at 46.

Therefore, the undersigned recommends that Scioto County's motion for summary judgment be

granted in this respect.

      As to Sheriff Donini's motion for summary judgment on plaintiff's wrongful death claim,

the undersigned recommends that the motion be denied.  As stated above in connection with the

Individual Officers' motion, public employees do not enjoy statutory immunity where their

conduct is deemed reckless and whether conduct is reckless is generally an appropriate inquiry for the trier of fact.  *Fabrey*, 639 N.E.2d at 35-36.  The evidence of record viewed in the light most favorable to plaintiff reflects a failed medical care system at Scioto County Jail where jail staff was not properly trained on logging inmate medication charts and where the designated jail physician failed to examine or have medical staff examine or monitor the vitals of an inmate who was reporting ongoing asthma attacks.  Should the jury accept plaintiff's representation of the facts, they could infer that Sheriff Donini, as the individual in charge of Scioto County Jail, acted recklessly by failing to ensure that the medical system provided an adequate level of care to its inmates.  *See Moss v. Lorain Cty. Bd. of Mental Retardation*, 924 N.E.2d 401, 407 (Ohio Ct. App. 2009) (failure to provide sufficient supervision over care system resulting in unreasonable risk of harm may represent recklessness such that statutory immunity does not attach).  *See also Range v. Douglas*, 878 F. Supp.2d 869, 892-93 (S.D. Ohio 2012) (citing *Moss* in determining that morgue director was not entitled to immunity under § 2744 where jury could find that his failure to more closely supervise morgue attendant was reckless).  Accordingly, whether Sheriff Donini's alleged conduct was reckless should be decided by a trier of fact and his motion for summary judgment on plaintiff's wrongful death claim should be denied.[21]

**VI. Conclusion**

Defendants Scioto County, Marty Donini, Jason Lute, Jay Springs, and Craig Johnson's motion to strike evidence (Doc. 111) is **DENIED**.

Further, the Court **RECOMMENDS** that:

(1) Dr. Walker's motion for summary judgment (Doc. 82) be **DENIED;**

---

[21]Plaintiff requested oral argument on the above motions for summary judgment.  *See* Doc. 107 at 1.  The undersigned finds that oral argument is not "deemed to be essential to the fair resolution of the" instant summary

(2) Jason Lute, Craig Johnson, and Jay Springs' motion for summary judgment (Doc. 78) be **DENIED**; and

(3) Scioto County and Sheriff Donini's motion for summary judgment (Doc. 77) be:

    (a) **GRANTED** as to plaintiff's supervisory liability claim;

    (b) **GRANTED** as to plaintiff's state law wrongful death claim against Scioto County;

    (c) **DENIED** as to the wrongful death claim against Sheriff Donini; and

    (d) **DENIED** as to plaintiff's municipal liability claims.


Date: _11/21/2013_____                           ___s/ Karen  L.  Litkovitz___
                                               Karen L. Litkovitz
                                               United States Magistrate Judge

---

judgment motions.  Therefore, plaintiff's request is denied.  *See* S.D. Ohio Civ. R. 7.1(b)(2).

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CANDY MARCUM,                                      Case No. 1:10-cv-790
          Plaintiff,

                                                  Weber, J.
          vs.                                     Litkovitz, M.J.

SCIOTO COUNTY, OHIO, *et al.*,
          Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).